UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
UNITED STATES OF AMERICA

-against-

ETHAN CAVE,

                          Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/21/2024

18 Cr. 689-1 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Ethan Cave, a prisoner serving a 180-month sentence at USP Big Sandy in Kentucky, moves for a reduction of his term of imprisonment under the federal compassionate release statute, 18 U.S.C. § 3582(c)(1)(A). *See* Def. Mem., ECF No. 92; Def. Supp. Letter at 1, ECF No. 103. For the reasons stated below, Cave's motion is DENIED without prejudice to renewal.

## BACKGROUND

On July 25, 2019, Cave pleaded guilty to narcotics conspiracy and possessing a firearm in furtherance of the drug conspiracy in violation of 21 U.S.C. §§ 841(a) and (b)(1)(A), 846, and 18 U.S.C. § 924(c)(A)(i). Dkt. Entry 07/25/2019; *see* Plea Tr., ECF No. 48. On June 9, 2021, the Court sentenced Cave to 180 months' imprisonment, to be followed by five years of supervised release. Dkt. Entry 06/09/2021; *see* Sentencing Tr. at 17:15–25, ECF No. 89; Judgment, ECF No. 88.

"Between 2016 and 2018, [] Cave ran a crack house on 214th Street in the Bronx known as the 214th Street [Drug Trafficking Organization ("DTO")]." Sentencing Tr. at 14:20–22. "Cave and other members of the 214th Street DTO sold as much as 200 to 300 grams of crack per day." *Id.* at 14:22–24. Cave also "kept multiple firearms to protect his drug business," *id.* at 15:2, and was involved in several shootings in connection with this business:

> In July of 2018, Mr. Cave shot at two rival drug dealers. In August 2018, Mr. Cave and other members of the 214th Street DTO drove to the rival crack house, and Mr. Cave shot through its window multiple times. On another occasion, in August 2018,

> he shot at a rival drug member multiple times. Also in 2018, he shot at a rival drug dealer who was taken to the hospital in critical condition with two gunshot wounds.

*Id.* at 15:3–12. Cave's applicable Guidelines sentencing range was 181 to 211 months' imprisonment based on an offense level of 29 and a criminal history category of IV. *Id.* at 6:11–15. The Court sentenced Cave to a below-Guidelines sentence of 180 months' imprisonment, the statutory mandatory minimum. *Id.* at 17:11–22.

Cave now moves "for immediate release or, in the alternative, supervised release under home confinement-like conditions, or a reduced sentence." Def. Mem. at 1 (citation omitted).[1] He contends that a reduction is merited given the excessive length of his sentence, the harshness of incarceration during the COVID-19 pandemic, and his ongoing efforts at rehabilitation. *Id.* at 2–4. The Government opposes the application. *See* Gov. Opp. at 1, ECF No. 94. Cave is scheduled to be released on December 10, 2031. Def. Mem. at 6 & n.3.

## DISCUSSION

I.  <u>Legal Standard</u>

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes the Court to modify a term of imprisonment if it finds that: "(1) extraordinary and compelling reasons warrant such a reduction; (2) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and (3) the § 3553(a) factors weigh in favor of a reduction in sentence." *United States v. Saez*, No. 16 Cr. 317, 2024 WL 303847, at *2 (S.D.N.Y. Jan. 26, 2024) (quotation marks omitted).[2]

---

[1] Cave contends that although the Court cannot "unilaterally transfer [him] to home confinement," it has the "authority to grant compassionate release and then impose home confinement-like conditions upon a [d]efendant's supervised release." Def. Mem. at 22 (internal quotation marks and alteration omitted) (quoting *United States v. Fairbanks*, No. 17 Cr. 6124, 2021 WL 776982, at *3 (W.D.N.Y. Mar. 1, 2021)).

[2] Section 3582 also requires an inmate to exhaust administrative remedies by requesting compassionate release from prison authorities. *See United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021) (citing 18 U.S.C. § 3582(c)(1)(A)). Cave appears to have satisfied this requirement, having requested release from the warden of his facility. *See* Def. Mem. at 7.

"A district court has broad discretion when considering a motion for compassionate release and may consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring." *United States v. Sanchez*, No. 01 Cr. 74, 2022 WL 4298694, at *2 (S.D.N.Y. Sept. 19, 2022) (citations omitted). To determine whether "extraordinary and compelling reasons" exist, the Court looks to U.S.S.G. § 1B1.13.[3] As relevant here, that policy statement provides that any "circumstance or combination of circumstances" that themselves or with the other reasons articulated in the policy statement "are similar in gravity to" the enumerated circumstances in the policy statement satisfies the first requirement. U.S.S.G. § 1B1.13(b)(5).[4] This statement, commonly referred to as the "catchall provision," recognizes that the Sentencing Commission "could not possibly identify the myriad extraordinary and compelling reasons that might warrant a sentence reduction" and that "judges are in a unique position to determine . . . what circumstances or combination of circumstances are sufficiently extraordinary and compelling to warrant a reduction in sentence." *United States v. Cromitie*, No. 09 Cr. 558, 2024 WL 216540, at *5 (S.D.N.Y. Jan. 19, 2024) (quoting U.S. Sent'g Comm'n, Guidelines Manual 2023: Supplement to Appendix C at 207); *United States v. O'Bryant*, No. 16 Cr. 317, 2023 WL 8447995, at *5 (S.D.N.Y. Dec. 6, 2023) (same). A defendant bears "the burden of showing that 'extraordinary and compelling reasons' to reduce his sentence exist." *United States v. Gotti*, 433 F. Supp. 3d 613, 619 (S.D.N.Y. 2020).

In addition, the Court must consider whether a sentence reduction is consistent with the factors set forth in 18 U.S.C. § 3553(a), which include:

---

[3] U.S.S.G. § 1B1.13 applies to defendant-initiated petitions as of the Commission's most recent amendments to the Guidelines, effective November 1, 2023. Sentencing Guidelines for the United States Courts, 88 Fed. Reg. 28,254, 28,254 (May 3, 2023); *see Saez*, 2024 WL 303847, at *2–3.

[4] Cave does not specify under which provision of the compassionate release policy statement he makes the present motion. Because the Court finds no other provision applicable, it construes the motion as an application pursuant to U.S.S.G. § 1B1.13(b)(5). Defendant cites his "excessive[ly]" long sentence as a factor warranting compassionate release, Def. Mem. at 7, but he does not qualify for release pursuant to U.S.S.G. § 1B1.13(b)(6) ("Unusually Long Sentence") because, among other things, he has not "served at least 10 years of the term of imprisonment."

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]
> (2) the need for the sentence imposed—
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > (B) to afford adequate deterrence to criminal conduct;
> > (C) to protect the public from further crimes of the defendant; and
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

II. Analysis

Cave argues that compassionate release is warranted based on a combination of factors: (1) the excessive nature of his 180-month mandatory minimum sentence; (2) the "horrific conditions of confinement" he has endured at the now-closed Metropolitan Correctional Center ("MCC") and at other Bureau of Prisons facilities; (3) the threat of COVID-19 and the fact that he has been detained throughout the pandemic; and (4) his rehabilitation to date. Def. Mem. at 7–14; Def. Reply at 2–6, ECF No. 95. The Court will address each of these factors in turn, though pursuant to the catchall provision, its adjudication of Cave's motion is based on their cumulative effect.

"[A] mandatory minimum sentence does not preclude a district court from reducing a term of imprisonment on a motion for compassionate release." *United States v. Halvon*, 26 F.4th 566, 570 (2d Cir. 2022). "However, just because it can be done, does not mean that it should be." *United States v. Rivera*, 509 F. Supp. 3d 13, 17 (W.D.N.Y. 2020). "[T]he compassionate release procedure is not a tool to simply correct a sentence because the original sentence appears too long." *United States v. Vargas*, No. 16 Cr. 406, 2022 WL 118737, at *5 (E.D.N.Y. Jan. 11, 2022) (citation omitted). "To do so would be tantamount to reversing the United States Congress in its law-making authority." *Id.* (citation omitted); *see United States v. Ayon*, No. 18 Cr. 269, 2020 WL 7401620, at *2 (S.D.N.Y. Dec. 17, 2020) (denying compassionate release that "would be in tension, if not

4

conflict, with Congress's intent"). Therefore, the Court must exercise "caution" when its actions "would not just be changing a sentence imposed at its discretion, but rather . . . a sentence mandated by Congress." *Rivera*, 509 F. Supp. 3d at 17.

Courts have found extraordinary and compelling reasons where a subsequent change in law makes an already-sentenced defendant's mandatory minimum sentence excessive. For example, after Congress concluded that "stacking sentences" pursuant to 18 U.S.C. § 924(c) "was unfair and unnecessary" and amended the law accordingly, courts held—and the Second Circuit affirmed—that defendants serving § 924(c) stacked sentences presented "extraordinary and compelling reasons" warranting a sentence reduction. *United States v. McCoy*, No. 02 Cr. 1372, 2022 WL 2981445, at *7 n.7 (S.D.N.Y. July 27, 2022) (citation omitted); *see United States v. Campbell*, No. 20-4204, 2022 WL 199954, at *2 (2d Cir. Jan. 24, 2022) (holding that eliminating "stacking" § 924(c) convictions may be considered an extraordinary and compelling circumstance warranting a sentence reduction); *United States v. Ballard*, 552 F. Supp. 3d 461, 466–67 (S.D.N.Y. 2021) (collecting cases). Cave, however, is not serving a stacked sentence, nor does he point to any other subsequent change in law justifying a sentence reduction.

Additionally, reducing Cave's sentence could "create[] an unwarranted sentencing disparity between [Cave] and similar defendants convicted of the same offense[s]—and Congress expressly instructed courts to consider the need to avoid such a disparity." *United States v. Keitt*, 21 F.4th 67, 72 (2d Cir. 2021) (citing 18 U.S.C. § 3553(a)(6)); *see also Ayon,* 2020 WL 7401620, at *2. At sentencing, the Court acknowledged that Cave's mandatory minimum sentence is exceedingly harsh. Sentencing Tr. at 17:11–22. But, absent other circumstances, it does not meet the "extraordinary and compelling" standard.

Cave's other proffered reasons, assessed in their totality and in conjunction with the length of his term of imprisonment, do not advance his motion. With respect to the conditions of Cave's detention, Courts in this Circuit recognize that the harsh conditions of confinement at the area's jails counsel in favor of a shorter overall sentence. *See, e.g.*, *United States v. Gonzalez*, 18 Cr. 669 (S.D.N.Y. Apr. 2, 2021), ECF No. 250; *United States v. Chavez*, 22 Cr. 303, 2024 WL 50233, at *1–*7 (S.D.N.Y. Jan. 4, 2024). Indeed, "[t]he conditions at [MCC] got so bad that, in August 2021, after a single visit by the Deputy Attorney General, the Department of Justice ordered the facility shuttered." *Chavez*, 2024 WL 50233, at *1.

However, "generalized statements about prison conditions untethered to compelling specifics of [a] defendant's particular circumstances do not make the defendant's conditions 'extraordinary and compelling.'" *United States v. Santana*, No. 12 Cr. 790, 2023 WL 2625790, at *4 (S.D.N.Y. Mar. 24, 2023); *see, e.g.*, *United States v. Butler*, No. 18 Cr. 834, 2022 WL 17968627, at *3 (S.D.N.Y. Dec. 27, 2022) (denying compassionate release where prison conditions were not so severe as to rise to level of extraordinary and compelling); *United States v. Marmolejos*, No. 19 Cr. 626, 2021 WL 807128, at *3 (S.D.N.Y. Mar. 3, 2021) (same); *United States v. Fiseku*, No. 15 Cr. 384, 2020 WL 7695708, at *4 (S.D.N.Y. Dec. 28, 2020) (same).

Likewise, "[s]ince the decline of COVID-19 cases and proliferation of vaccines, courts in this Circuit have generally rejected compassionate release motions based on the threat posed by the virus, asserting that the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release, absent additional factors." *United States v. Amerson*, No. 05 Cr. 301, 2023 WL 4497767, at *4 (E.D.N.Y. July 12, 2023) (emphasis and citation omitted). To that end, Cave contends that his asthma increases his risk of hospitalization due to COVID-19. Def. Mem. at 12. Although undoubtedly serious, Cave's condition does not rise to the risk level of cases in which

6

defendants' comorbidities merit a sentence reduction. *See, e.g.*, *United States v. Tucker*, No. 13 Cr. 378, 2021 WL 3722750, at *2–3 (S.D.N.Y. Aug. 23, 2021) (granting one-year reduction where defendant had sickle cell disease and other conditions that made him extremely vulnerable to COVID-19); *United States v. Watts*, No. 92 Cr. 767, 2023 WL 35029, at *8–9 (E.D.N.Y. Jan. 4, 2023) (granting defendant's compassionate release motion based in part on his heightened COVID-19 risk due to chronic obstructive pulmonary disease and age). As to the effect of COVID-19 on incarceration more generally, the Court agrees that "the pandemic has made incarceration harsher and more punitive than would otherwise have been the case" and shall consider this among the other factors in evaluating the totality of Cave's circumstances. *United States v. Tellier*, No. 92 Cr. 869, 2022 WL 1468381, at *4 (S.D.N.Y. May 10, 2022) (citation omitted).

Lastly, although "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason," 28 U.S.C. § 994(t), "courts may consider it as a factor . . . in determining if there are extraordinary and compelling reasons for compassionate release," *United States v. Vasquez*, No. 96 Cr. 1044, 2024 WL 2385264, at *5 (E.D.N.Y. May 23, 2024) (citation omitted). Since his detention, Cave has made strides towards earning his GED, maintained work assignments, and participated in prison education programs. Def. Mem. at 17. The Court finds these steps encouraging. However, these activities are "not at all out of the ordinary for federal inmates." *United States v. Corbett*, No. 10 Cr. 184, 2023 WL 8073638, at *7 (S.D.N.Y. Nov. 21, 2023); *see also United States v. Torres*, No. 16 Cr. 500, 2021 WL 1131478, at *3 (S.D.N.Y. Mar. 24, 2021) (finding enrollment in GED and other courses was not an extraordinary and compelling circumstance); *United States v. Bolden*, 15 Cr. 466, 2021 WL 242551, at *2 (S.D.N.Y. Jan. 25, 2021) (holding that "participation in or completion of [programming], while laudable, is not an extraordinary and compelling reason warranting a compassionate release"). Cave has also incurred

multiple disciplinary infractions, including for possession of a hazardous tool, assaulting prison staff, and fighting with another inmate. Gov. Opp. at 3. On balance, Cave's conduct while detained does not significantly bolster his motion for compassionate release.

## CONCLUSION

Weighing Cave's circumstances in the aggregate, the Court finds that they are not "similar in gravity" to those explicitly enumerated in the Guidelines' compassionate release policy statement. Because the motion fails to satisfy the high bar required for compassionate release, it is DENIED.[5] The Government is directed to serve a copy of this order on USP Big Sandy.

SO ORDERED.

Dated: August 21, 2024
New York, New York

_____
ANALISA TORRES
United States District Judge

---

[5] Because Cave has not met his burden of proving extraordinary and compelling circumstances, the Court need not address the § 3553(a) factors.